Alice E. Loughran
202 429 6202
aloughra@steptoe.com

**Steptoe**

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

March 2, 2026

Hon. Christopher G. Conway
Clerk of the Court
U.S. Court of Appeals for the Seventh Circuit
219 S. Dearborn St.
Chicago, IL  60604

      Re:  Rule 28(j) letter in Nos. 23-2309, 23-2467
          *Bad River Band v. Enbridge Energy Co.*

Dear Mr. Conway:

On February 27, 2026, the district court stayed its permanent injunction requiring Line 5 to cease operations by June 16, 2026. R.760 (order attached). The stay remains in effect until the appeal is resolved.

The district court found that Enbridge "certainly has a likelihood of success" on its appeal challenging the injunction remedy. R.760:6. While the court said that Enbridge "still raises no valid defense" on trespass liability, the district court had previously rejected Enbridge's trespass arguments and that issue is preserved on appeal. R.760:4. Enbridge, instead, focused the stay papers on the remedy because the district court had not previously considered the views of the United States and Canada and other recent developments. R.760:4. The district court agreed that "Enbridge certainly has a likelihood of success in persuading the Seventh Circuit that this court's permanent injunction was the wrong outcome, particularly with the United States and Canada now adding in before the Seventh Circuit." R.760:5–6.

The district court also found that "the remaining equities easily favor granting a stay of the shutdown injunction." R.760:6. The court emphasized that "no alternative modes of transportation have developed to replace Line 5's products into the downstream markets, meaning that a shutdown would inevitably cause significant shortages of propane, increased energy prices in the Midwest and Canada, and significant economic consequences, especially for the poor and other economically challenged households." R.760:3. The court recognized that Line 5's operations on the Reservation are safer than ever, with the installation of the log jacks and check valve, and that any trespass is limited to twelve allotted parcels—less than a half percent of Line 5's overall length. R.760:2, 5. "[T]he Band's concerns do not outweigh the near certain harm to local, state, national,

and international economies that would occur with an abrupt shutdown on June 16th ….” R.760:6. The district court stayed “the shutdown order until Enbridge’s appeal is resolved by the Seventh Circuit.” R.760:6.

Separately, the Deputy Secretary of the Interior assumed jurisdiction over Enbridge’s administrative appeals on the right-of way renewals for the allotted parcels. R.730-1 (attached); Enbridge Opening Br. 29–32.

Respectfully,

/s/   Alice E. Loughran

Alice E. Loughran


cc:   Counsel for Appellees/Cross Appellants
       Counsel for the Governments of the United States and Canada

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BAD RIVER BAND OF THE LAKE
SUPERIOR TRIBE OF CHIPPEWA
INDIANS OF THE BAD RIVER
RESERVATION,

OPINION AND ORDER

Plaintiff and
Counter Defendant,

v.

19-cv-602-wmc

ENBRIDGE ENERGY COMPANY, INC., and
ENBRIDGE ENERGY, L.P.,

Defendants and
Counter Claimants,

v.

NAOMI TILLISON,

Counter Defendant.

---

Nearly three years ago, this court entered a permanent injunction in this case against Enbridge Energy regarding its operation of Line 5, a crude oil and natural gas liquids pipeline that runs through the Bad River Reservation in Northern Wisconsin. (Dkt. #689.) In brief, the injunction required Enbridge to: (1) implement a monitoring and shutdown plan for Line 5; (2) disgorge profits for past trespass on the Bad River Band's property; (3) continue disgorging profits to the Band on a quarterly basis, so long as Line 5 operated on the Band's land; (4) cease operation of Line 5 on any parcel within the Band's tribal territory on which Enbridge lacks a valid right of way on or before June 16, 2026; and (5) arrange prompt, reasonable remediation at those same parcels. Enbridge appealed and the Seventh Circuit heard oral argument in February 2024, but the court of appeals has not yet issued a merits opinion on the case. *Bad River Band of the Lake Superior*

*Tribe of Chippewa Indians of the Bad River Reservation v. Enbridge Energy Company, Inc., et al.,*
No. 23-2309 (7th Cir.).

Given the many delays occurring in Enbridge's original, promised completion dates for Line 5's bypass of the Band's tribal territory ("the Line 5 Relocation Project"), and extension of that date again by three more years at the time of final judgment, the court can hardly feign surprise that a bypass was not (and will not be) close to completion before its June 16, 2026, deadline for a shutdown of operation of Line 5 on tribal lands. Still, with that deadline now looming, Enbridge has returned to this court to request a stay of the portion of that permanent injunction requiring shutting down Line 5 on those lands by June 16. (Dkt. #707.) Although representing that significant progress has been made to obtain the permits needed for the Line 5 Relocation Project, Enbridge explains that construction has been delayed due to litigation in administrative proceedings, much of it caused by ongoing opposition to the Line 5 Relocation Project by plaintiff and others. At the same time, plaintiff again casts aspersions on defendant's delays in implementing the relocation solution. Since plenty of blame for delay can be shared by all parties and others, the court sees little point in casting aspersions. Indeed, the court would note with approval the parties' laudable cooperation in adopting ameliorative steps at the meander, which is still the most likely source of a failure of Line 5 on tribal lands, including installing much more effective shut off valves closer to the meander and some 24 log jack supports to forestall the risk of a catastrophic structural failure there.

In the meantime, it is also unsurprising that no alternative modes of transportation have been developed to replace Line 5's products into its downstream markets, meaning

2

that a shutdown would inevitably cause significant shortages of propane, increased energy prices in the Midwest and Canada, and significant economic consequences, especially for the poor and other economically challenged households. Moreover, for the first time, the Governments of Canada and the United States have now filed statements of interest supporting Enbridge's stay request, heightening concerns about the role of the 1977 Transit Treaty between the two countries in binding this court and foreign relations more generally.

Unsurprisingly, the Band objects to a stay of the court's shutdown injunction order, arguing that Enbridge's ongoing trespass on tribal lands is intolerable and, although the parties have worked together to mitigate the risk of a pipeline breach at the Bad River meander, the mitigation efforts damaged tribal land, required the Band to expend significant time and resources, and should hardly be used against it in finally seeing its rights vindicated.

After considering the parties' arguments and weighing Enbridge's likelihood of success on appeal with potential irreparable harm, the court concludes that a balance of the equities warrants a stay of the shutdown order at least until the Seventh Circuit weighs in on the area of unsettled law. Most concerning to the court is the potential devastating impact a sudden shutdown of Line 5 would have on energy prices and local economies, as well as foreign relations with Canada. While acknowledging that there is little legal precedent on how a court should weigh such significant considerations against a tribe's sovereign authority to control its own territory, the court will stay the shutdown order until the Seventh Circuit has resolved the pending appeal and provided guidance on these

3

complex, unsettled legal questions. However, the court declines Enbridge's request that the stay be continued through the Supreme Court certiorari process, believing the Seventh Circuit is in the best position to address that question if, and when, it chooses to give the Band affirmative relief.

OPINION

In deciding whether to stay an injunction pending appeal, the court considers four factors: "(1) the likelihood the applicant will succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties; and (4) the public interest." *Common Cause Indiana v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020). "The standard calls for equitable balancing, much like that required in deciding whether to grant a preliminary injunction" in the first place, but the "first two factors are most critical." (*Id.* (quoting *Venckiene v. United States*, 929 F.3d 843, 853 (7th Cir. 2019)).

Each side argues it is more likely to succeed on the merits, making several of the same arguments that the court considered three years ago when deciding summary judgment in this case. However, Enbridge still raises no valid defense to its ongoing trespass on the Band's land and presents no legal authority supporting its position that the court could permit it to trespass indefinitely on the Band's land. Nor has Enbridge cited any legal authority suggesting that the court could effectively force a renewal of expired easements despite the Band's sovereignty, by permitting Enbridge to pay a fee or profits while continuing to operate its pipeline. Enbridge *has* presented evidence that the public nuisance threat to a breach of Line 5 at the Bad River meander has been somewhat

4

mitigated by the new shutdown valve and log jack revetment project, although the court is troubled by inadvertently deterring the Band's cooperation with Enbridge in adopting remediation effort by then using those improvements to justify further trespass on its lands.

In the end, Enbridge's motion does not depend on a showing that it has a likelihood of success as to *liability* on the Band's trespass or public nuisance claims. Rather, Enbridge argues that it has a likelihood of success in showing that this court exceeded its authority in issuing as part of the remedy in this case, a permanent injunction that would require it to shut down Line 5 on June 26, 2026. On this point, the court agrees Enbridge has shown that it has, at the very least, some likelihood of success.

Although this court concluded that the Band was ultimately entitled to permanent injunctive relief on its trespass claim, the court had little legal guidance in determining the appropriate equitable remedies and crafting the permanent injunction. Moreover, as this court has repeatedly acknowledged, shutting down an international pipeline based on a potential breach at the meander and Enbridge's trespass on 2.33 miles of a 642-mile pipeline "has always been about a tail wagging a much larger dog." (Dkt. #684, at 39.) Further, the court has expressed concerns about "significant public policy implications on the trade relationship between the United States and Canada," particularly in light of the Transit Treaty (dkt. #360, at 40–41), but found no legal guidance on how the court should weigh the requirements of the 1977 Transit Treaty between Canada and the United States against the requirements of the 1854 Treaty between the Chippewa and the United States. Finally, the court was "wary of permanently shutting down the pipeline without providing adequate time for market adjustments, and hopefully, even for Enbridge to complete a

5

proposed reroute of Line 5." (Dkt. #684, at 51.)  In crafting the permanent injunction, therefore, the court attempted to balance these concerns, with the best outcome being that Enbridge could complete its relocation project or the affected parties (the Band, Enbridge, Canada, the United States) could reach a solution before any shutdown would occur. However, given the complexities of the case and unsettled nature of the law, Enbridge certainly has a likelihood of success in persuading the Seventh Circuit that this court's permanent injunction was the wrong outcome, particularly with the United States and Canada now wading in before the Seventh Circuit.

After concluding that Enbridge has a likelihood of success on its appeal, the remaining equities easily favor granting a stay of the shutdown order.  Indeed, in light of the mitigation efforts at the meander, despite the Band's valid concerns, the threat of an imminent, catastrophic rupture of Line 5 has thankfully been reduced.  Thus, although the court is sympathetic to the Band's objection to continued trespass on its lands, the Band's concerns do not outweigh the near certain harm to local, state, national and international economies that would occur with an abrupt shutdown on June 16th, nor the harm to the United States' already frayed trade relationship with Canada.  Accordingly, the court will stay the shutdown order until Enbridge's appeal is resolved by the Seventh Circuit.[1]

---

[1] Under Rule 62(d) of the Federal Rules of Civil Procedure, this court can stay an injunction pending appeal "on terms for bond or other terms that secure the opposing party's rights."  The Band did not ask for a bond, and the court does not think a bond is necessary here, particularly since Enbridge will already have to continue paying the Band under the terms of the permanent injunction so long as it operates Line 5 on the Reservation.  Further, given how long the appeal has been pending, a further stay should not be in place for a significant amount of time.

6

ORDER

IT IS ORDERED that:

1. Defendants Enbridge Energy Company, Inc. and Enbridge Energy, L.P.'s motion to stay injunction pending appeal (dkt. #707) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Enbridge's request that Paragraph 4 of the court's Amended Final Judgment (dkt. #689, ¶ 4) requiring defendants to cease operation of Line 5 by June 16, 2026, be STAYED until the appeal is resolved by the Court of Appeals for the Seventh Circuit. Enbridge's request that the stay continue through the Supreme Court certiorari process is DENIED.

2. The motions for leave to file amicus briefs by the Government of Canada (dkt. #735), the United States (dkt. #738), and 350 Wisconsin, League of Women Voters of Wisconsin, Sierra Club and Clean Wisconsin (dkt. #749) are all GRANTED.

Entered this 27th day of February, 2026.

BY THE COURT:

_____
WILLIAM M. CONLEY
District Judge



THE DEPUTY SECRETARY OF THE INTERIOR

WASHINGTON

**RECEIVED**

**JULY 17 2025**

JUL 2 4 2025

Memorandum

OFFICE OF HEARINGS AND APPEALS
BOARD OF INDIAN APPEALS

To:         Acting Director, Office of Hearings and Appeals

From:       Deputy Secretary

Subject:    Assumption of Jurisdiction of *Enbridge Energy, Limited Partnership v. Acting Midwest Reg'l Dir., Bureau of Indian Affairs*, IBIA Docket Nos. 21-069 through 21-083

Pursuant to 43 C.F.R. § 4.5 and related legal authorities, I am hereby informing you that I have decided to assume jurisdiction over this case. Please immediately take steps to transfer the relevant filings and associated materials to my office. Please contact the Division of General Law at (202) 208-7586, if you have any questions regarding this matter.


cc:

Hon. Thomas Blaser
David L. Feinberg, Esq. For Appellant, Enbridge Energy, LP
Michael Davis, Esq. For Appellant, Enbridge Energy, LP
Claire R. Newman, Esq. For Bad River Band



# United States Department of the Interior

OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS
801 NORTH QUINCY STREET
SUITE 300
ARLINGTON, VA 22203

| | | |
|---|---|---|
| ENBRIDGE ENERGY, LIMITED PARTNERSHIP, | ) | Order Dismissing Appeals |
| Appellant, | ) | |
| | ) | |
| v. | ) | Docket Nos. IBIA 21-069 |
| | ) | through    21-083 |
| ACTING MIDWEST REGIONAL DIRECTOR, BUREAU OF INDIAN AFFAIRS, | ) | |
| | ) | |
| Appellee. | ) | July 28, 2025 |

On July 24, 2025, the Board of Indian Appeals (Board) received a memorandum from the Deputy Secretary of the Interior issued on July 17, 2025, assuming jurisdiction over these appeals pursuant to 43 C.F.R. § 4.5 and related legal authorities.

As instructed by the Deputy Secretary's memorandum, all documents that have been filed with or issued by the Board concerning these appeals are being transmitted to the Office of the Secretary.

Because the Board no longer has jurisdiction over these appeals, they are hereby dismissed.

I concur:

Thomas A. Blaser
Chief Administrative Judge

James A. Maysonett
Administrative Judge

71 IBIA 115

## CERTIFICATE OF WORD COUNT

I hereby certify that the body of the foregoing Rule 28(j) letter does not exceed 350 words.

## CERTIFICATE OF SERVICE

I certify that on March 2, 2026, I caused a true and correct copy of the foregoing letter and attachments (including R.760) to be served via the Court's ECF system upon all counsel of record. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/  Alice E. Loughran

Alice E. Loughran
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6202
aloughra@steptoe.com